UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>   v.<br><br>DONALD TWITO,<br><br>            Defendant. | Case No. 4:10-CR-209-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendant Donald Twito's Motion in Limine to Exclude Prior Bad Acts or Convictions (Dkt. 13). The Government has indicated that it intends to introduce evidence of prior contacts between Defendant Donald Twito and United States Forest Service Law Enforcement Officers Karl Stocker and Travis Tippit to prove motive, intent, and absence of mistake or accident. Fed.R.Evid. 404(b).

## BACKGROUND

On August 25, 2010, a federal grand jury returned a one-count indictment against Defendant Donald Twito charging him with Wilfully Injuring Property of the United States, in violation of 18 U.S.C. §1361. Trial in this case is set for January 12, 2011, in Pocatello.

At trial, the United States intends to introduce evidence to establish the following facts:

### A. The July 25, 2010 Incident

On July 25, 2010, United States Forest Service ("USFS") Law Enforcement Officer Karl Stocker was driving his patrol vehicle, a 2009 Ford F250 white pickup truck, on duty in Lemhi County. He passed a 2-ton truck loaded with wood poles. Stocker observed through his side view mirror a USFS wood permit attached to the load of poles. Stocker turned his duty truck around and turned on his flashing lights. He followed the 2-ton truck about two/tenths of a mile into a lane he knew led to the Twito property. The 2-ton truck stopped before Stocker turned into the lane. Stocker stopped his duty truck about twenty to twenty five feet behind the 2-ton truck and began to call his location into dispatch.

As he was calling his location, Stocker claims he heard the 2-ton truck engine rev. The truck then backed into Stocker's duty truck. According to Stocker, the defendant, Don Twito exited the driver's side of the truck while his brother, Ken Twito, exited the passenger sided of the truck. Both approached Stocker's duty truck and began yelling at Stocker to get off of their private property. Stocker remained in his vehicle and through an open window instructed Don and Ken to get back into their vehicle.

At this point, Stocker backed his vehicle up to gain some distance between himself and the 2-ton truck. Don returned to his truck, drove through a gate at the end of the driveway, and Ken locked the gate behind them. Stocker's truck was disabled.

**MEMORANDUM DECISION AND ORDER - 2**

Stocker called for assistance from Lemhi County Sheriff's Office. Lemhi County Sheriff's Deputy Jeff Stokes responded. Stokes and Stocker climbed over the locked gate into the Twito's yard. Don was carrying a gun. Stokes took the gun off Don, unloaded it, and set it on the wood pile.

Stokes interviewed Don and Ken. Stocker recorded this interview. Don claimed he did not run into Stocker. Ken insisted that Stocker ran into him. Don also claims that he was just backing up to get the mail. Don insisted that Stocker "had it in for them" and was "stalking" them. Ken stated that he saw Stocker "come flying by" then turn around and come back. Don and Ken also claimed that Stocker did not have his lights on.

Stocker checked the mail box while he was waiting for Deputy Stokes. He asserts there was no mail in the box. It cost $3016.47 to repair the damage to Stocker's duty truck.

### B. Twito's Prior Contacts with Stocker and Tippit

At trial, the Government seeks to introduce evidence – through the testimony of Stocker, and another Forest Service law enforcement officer, Travis Tippit – that Don had a number of previous contacts with the Forest Service in the weeks and months prior to the incident. The Government seeks to introduce this evidence to show Don acted willfully.

According to the Government, on June 8, 2010, Forest Service Officer Travis Tippit stopped Don and Ken Twito to inspect permits. Tippit issued Ken Twito a violation notice, and Ken paid the collateral associated with the notice. The Government

describes Don and Ken Twito as being courteous as they tried to persuade Tippit not to give them a citation. But the Government claims Don and Ken became angry once Tippit began writing the citation.

In October 2009, Stocker stopped Don and Ken to inspect permits. The Government claims that Stocker attempted to issue violation notices to both Don and Ken in the lane to their property – in nearly the identical place where the Government alleges Don struck Stocker's duty truck on July 25, 2010. The Government further claims that Don and Ken began "circling" Stocker and telling him to get of their private property as Stocker attempted to issue the violations. Because Stocker felt that situation was not safe, he left and sought the assistance of a county law enforcement. Stocker was unable to locate Don and Ken. Later, Stocker issued the violation notices and warnings to both Don and Ken while they were in their vehicle and Stocker was in his vehicle. Don and Ken paid the collateral associated with the notices.

A few months earlier – in June 2009 – Stocker contacted Don and Ken Twito to inspect permits. He had Don and Ken properly validate their tags.

The Government does not seek to introduce all the details of the June 19, 2009 and June 8, 2010 stop but instead only seeks to introduce evidence that Tippit and Stocker had contacts with Don Twito, the date of those contacts, who was present when the contacts occurred, where the contacts occurred, and that it was on USFS business.

However, the Government does seek to admit in its case in chief the October 2009 incident because they contend "it is so similar to the case at bar." *Amended Notice of*

*Intent to Use Rule 404(b) Evidence* at 3, Dkt. 30.

Twito objects to the Government's introducing any evidence of Don Twito's prior contacts because it would "induce speculation and confuse the jury." *Def's Resp.*, at 2, Dkt. 18. Twito contends that the evidence is irrevelant and the prejudice it would cause outweighs any probative value it might have. Twito says, however, that he would "probably" be willing to stipulate that he and Stocker are familiar with each other without the need to use prior bad acts.

## ANALYSIS

Rule 404(b) bars "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). But the introduction of "prior bad acts" to prove motive, intent, and absence of mistake or accident do not implicate Rule 404(b)'s prohibition.

Prior bad act evidence "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). "So long as the evidence is offered for a proper purpose ... the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance." *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997).

Here, Rule 404(b) does not forbid admission of evidence of Don Twito's contacts with Stippet and Stocker. Evidence of Twito's prior contact with the Forest Service

officers, and Stocker in particular, is material to the issue of motive and intent. The October 2009 incident and the July 2009 incident involved the same Forest Service office, and during both incidents, Twito expressed anger that the officer was on his private property. It is not too remote in time because each of these incidents occurred within weeks or months of the incident at issue here. *See, e.g., U.S. v. Lozano,* 623 F.3d 1055, 1059 -1060 (9th 2010). Moreover, the Court is not aware of any dispute that the contacts occurred, and Twito was present during each of the incidents.

But even if the proffered evidence satisfies the requirements of Rule 404(b), the district court should decline to admit it under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 1060 (citation and internal quotation marks omitted). Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, exclusion of relevant evidence to avoid unfair prejudice is an extraordinary remedy to be used sparingly, *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir.1987), and in balancing probative value against possible prejudice, the court must consider the need for the prior act evidence to prove a particular point, such as intent. *United States v. Morris*, 827 F.2d 1348, 1350 (9th Cir.1987), *cert. denied*, 108 S.Ct. 726 (1988).

The Court is satisfied that the evidence of Twito's contacts with the Forest Service officers should be admitted. As noted above, the evidence of the contacts is clearly

probative of Twito's willfullness, and the prejudice may be limited by a cautionary instruction.  *Id.*  Therefore, the Government may introduce evidence of Twito's contacts with Stocker and Tippit in its case in chief.

With respect to the June 19, 2009 and June 8, 2010 incidents, the Government may introduce evidence only that Tippit and Stocker had contacts with Don Twito, the date of those contacts, who was present when the contacts occurred, where the contacts occurred, and that it was on USFS business.  The details of the October 2009 incident may be admitted in full.

## ORDER

**IT IS ORDERED that** Defendant Donald Twito's motion in limine (Dkt. 13) is DENIED.

DATED:  **January 13, 2011**

B. LYNN WINMILL
Chief Judge U.S. District Court